FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 11, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROSEBUD KINDRICK,<br><br>        Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | NO: 1:16-CV-03195-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 16. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Leisa Wolf. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

## JURISDICTION

Plaintiff Rosebud Kindrick protectively filed for supplemental security income and disability insurance benefits on October 2, 2009, alleging an onset date of April 23, 1998. Tr. 247-57. Benefits were denied initially (Tr. 117-31) and upon reconsideration (Tr. 133-43). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Dan R. Hyatt on February 2, 2012. Tr. 42-62. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 90-110); but on February 28, 2014, the Appeals Council vacated the decision and remanded the case for further proceedings (Tr. 111-16). Plaintiff subsequently appeared for a hearing before ALJ Rudolph Murgo on February 12, 2015. Tr. 63-85. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 19-41), and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Rosebud Kindrick ("Plaintiff") was 39 years old at the time of the hearing. Tr. 66. She testified that she finished the eleventh grade. Tr. 68. Plaintiff lives with her ex-husband, who works outside the home, and her 13 year old son. Tr. 68-69. Plaintiff has no work history, and has never worked full time. Tr. 71. At the time of the hearing, Plaintiff testified that she makes $225 dollars a month cleaning her church and a house. Tr. 70. She testified that she has no trouble walking, lifting, or sitting; and she takes medication for anxiety when she is going to be around people. Tr. 73-74. As to activities, Plaintiff testified that she goes to church and Bible study several times a week, works in the yard, cooks, shops, does dishes and laundry, cleans, reads the Bible, plays board games, and takes walks. Tr. 74-78.

Plaintiff alleges disability due to mental health impairments. *See* Tr. 117, 138. As noted by the ALJ, and reflected in the longitudinal record, Plaintiff presents a medical history significant for drug and alcohol abuse, schizoaffective disorder, anxiety disorder, and bipolar disorder. Tr. 26. Despite alleging an onset date in the 1990's, records show minimal treatment until 2007, and most consistently from 2009-2012. Tr. 26-27. During this time, Plaintiff was diagnosed, at varying points, with schizoaffective disorder, social phobia, alcohol abuse, depressive disorder, social anxiety disorder; and mental health providers opined, respectively, that she would have marked to severe limitations in learning

new tasks and remembering complex instructions; social interactions with coworkers and the general public; and maintaining appropriate behavior in the workplace. Tr. 27-29 (citing Tr. 367-68, 373, 456-57, 675-76, 683).

Records during this same period also show consistent and ongoing substance abuse; according to Plaintiff's own reports, medical opinion evidence, and treatment records. Tr. 27, 46, 372-74, 378, 464, 479-80, 503, 529, 572-74, 675, 688-89, 692-93, 696-99, 702, 705, 713, 719-20, 728, 739-40, 752, 776-77. However, Plaintiff testified at the February 12, 2015 hearing that she had been sober since October 29, 2013. Tr. 78. She also reported she does not go to treatment; and had not received mental health treatment since 2012, aside from two visits to a mental health provider in the six months before the hearing. Tr. 78-80. Upon questioning by the ALJ, Plaintiff testified that "she [didn't] see why [she] couldn't" work full time if she didn't have to be around "a bunch of people." Tr. 80-81.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c);

416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must determine whether the DAA is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 23, 1998, the alleged onset date. Tr. 25. At step two, the ALJ found Plaintiff has the following severe impairments: drug and alcohol abuse, schizoaffective disorder, anxiety disorder, and bipolar disorder. Tr. 25. At step three, the ALJ found that Plaintiff's impairments, including the substance use disorder, meet sections 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 25. However, the ALJ found that if Plaintiff stopped the substance use, she would continue to have severe impairments or combination of impairments at step two, but the impairments would not meet or medically equal the severity of a listed impairment at step three. Tr. 30. The ALJ then determined that if the Plaintiff stopped the substance use, she would have the RFC "to perform a full range of work at all exertional levels but with the following nonexertional

limitations: (1) The claimant is limited to simple, repetitive tasks typical of occupations with an svp level of 1 or 2; and (2) the claimant should have only superficial contact with coworkers." Tr. 31. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 34. At step five, the ALJ found that if Plaintiff stopped substance abuse, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as floor cleaner, janitor, and hand laundry. Tr. 34. Finally, the ALJ found that substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use. Tr. 35. Thus, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 35.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred by finding substance use was a factor material to the finding of disability; and

2. Whether the ALJ erred by failing to develop the record.

## DISCUSSION

**A. DAA Analysis**

A social security claimant is not entitled to benefits "if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Therefore, when there is medical evidence of drug or alcohol addiction, the ALJ must conduct a DAA analysis and determine whether drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). "The claimant bears the burden of

proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

Here, the ALJ found substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped substance use. Tr. 32-35. Plaintiff generally contends that the ALJ's materiality finding was not supported by substantial evidence in accordance with Social Security Ruling ("SSR") 13-2p, which explains the Commissioner's policy on "the analysis of substance abuse (or "DAA") in a case involving co-occurring mental disorders." ECF No. 14 at 10-12 (citing SSR 13-2p (February 20, 2013), *available at* 2013 WL 621536). SSR 13-2p directs, in pertinent part, that the ALJ consider periods of abstinence from drug and alcohol use that are

> long enough to allow the acute effects of drug and alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

SSR 13-2p at *12. Further, SSR 13-2p directs that "[w]e will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring

ORDER ~ 12

mental disorders would improve to the point of nondisability in the absence of DAA." SSR 13-2p at *9.

As an initial matter, and as instructed by SSR 13-2p, the ALJ properly relies on evidence gathered from Plaintiff's undisputed period of sobriety beginning October 29, 2013, and extending through the date of the hearing. Tr. 32, 78. Plaintiff agrees that she "has had a long period of sobriety, offering a good opportunity to establish the effect of substance abuse on her other disorders." ECF No. 14 at 12. However, Plaintiff argues that the ALJ improperly "based his finding that substance abuse is material to [Plaintiff's] disability based entirely on her own statements, not medical evidence." *Id*. In support of this argument, Plaintiff cites medical evidence that could be considered more favorable to her, including: GAF scores of 45 and below in September 2014, January 2015, and May 2015, which Plaintiff argues are "unchanged from earlier GAF scores" before Plaintiff's period of sobriety; Plaintiff's report in September 2014 that she has "down days" during which she spends most of her time in bed; and her report in May 2015 that she had a three week period of depression that was "unusually long." ECF No. 14 at 13-14 (citing Tr. 868, 871, 913, 930-32). However, the ALJ did consider the evidence cited by Plaintiff, along with her reports during the same relevant time period that she is happy, cleans, works in her yard, is out in the community, does not hear voices since not using drugs, has restful sleep, and "is very proud of the person she

has become in recovery." Tr. 33, 868-69. In January 2015, Plaintiff reported that her mental health was stable and her stress was low; and Plaintiff's mental health provider did not schedule therapy because only "a change to medication management" was warranted. Tr. 909-11. Moreover, the ALJ relied on Plaintiff's own testimony, confirmed by the record, that she has had only minimal mental health treatment since becoming sober and takes medication for her mental health, which indicates that she is able to "function fairly well." Tr. 32. Finally, even if selected medical evidence in this case may be interpreted more favorably to the Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. For all of these reasons, the ALJ reasonably found that the "limited objective medical evidence in the record since [Plaintiff's] date of sobriety indicates that when she is not using drugs and alcohol, and is compliant with treatment, she is able to function at the [RFC] outlined" in the decision. Tr. 33.

Plaintiff additionally argues that the ALJ improperly relied on her testimony at the hearing as part of the materiality analysis. ECF No. 14 at 14-15. Here, Plaintiff testified that she would accept a full time job as a janitor if it was available in her town, but she didn't have a car and does not like to work around "a bunch of people." Tr. 80-81. The ALJ also noted that Plaintiff appeared "candid, calm, and appropriately interactive" at the hearing; she was appropriately dressed;

and she testified that she has developed a deep religious belief, goes to church, is involved in prayer group twice a week, lives with her 13 year old son and ex-husband, takes care of her son, does housework and cooks, reads the Bible, and works part time cleaning her church and another house. Tr. 32, 74-82. The ALJ accorded Plaintiff's testimony great weight and found it "supports the conclusion that [Plaintiff] functions at a significantly higher level when she is not using drugs and alcohol, and would be able to work at the [assessed RFC]." Plaintiff argues that the ALJ erred in granting Plaintiff's testimony great weight because "[a]lthough [she] appeared to be functioning well on the day of her hearing, [Plaintiff's] medical records indicate that her presentation at times is much different when she is experiencing one of 'lows,' consistent with the waxing and waning of bipolar symptoms." ECF No. 14 at 14. However, as noted above, the ALJ considered the *content* of Plaintiff's testimony, in addition to her demeanor at the hearing, as supportive of the conclusion that Plaintiff functions at a higher level when she is not using drugs and alcohol. Tr. 32. Moreover, the ALJ found bipolar disorder was a severe impairment at step two, and despite Plaintiff's arguments to the contrary, the ALJ did consider medical evidence of "waxing and waning of symptoms" as part of the DAA analysis, including Plaintiff's reported "highs" of four to seven days, and "downs" that can last up to three days. Tr. 33 (citing Tr. 868). For these reasons, the Court finds no error in the ALJ's consideration of

Plaintiff's demeanor and testimony at the hearing as part of the DAA analysis. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility"); *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (in evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation).

Finally, the ALJ found that "since [Plaintiff] has been clean and sober, her activities of daily living have been wide," including: personal grooming, cooking, shopping, doing dishes and laundry, taking care of her dogs, helping care for her son, doing yard work, going to church and prayer group regularly, reading the Bible, playing board games with family, and working part-time cleaning her church and another house. Tr. 33, 70, 74-78. Plaintiff does not specifically address or challenge this finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court may decline to address this issue as it was not raised with specificity in Plaintiff's briefing). It was reasonable for the ALJ to find that Plaintiff's "activities of daily living since being clean and sober also support the conclusion that [she] is able to return to work at the [assessed RFC]." Tr. 33.

Based on the foregoing, the conclusion that Plaintiff's co-occurring mental disorders had improved to the point of nondisability in the absence of substance use, as directed by SSR 13-2p, was supported by substantial evidence, including:

Plaintiff's "treatment course and daily activities," objective medical evidence, and her own testimony particularly as regards her ability to work full time. Tr. 32-35. Thus, the ALJ did not err in finding Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use." Tr. 35.

### B. Duty to Develop the Record

"An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff argues that the record "was clearly inadequate to allow for a materiality analysis" in this case because of the lack of medical treatment during the period of sobriety, and Plaintiff's failure to appear at a consultative examination because "both Social Security and [her] representative had lost contact with her." ECF No. 14 at 15-16. However, the ALJ specifically acknowledged that "[t]here is little current medical evidence of record to evaluate due to the minimal treatment [Plaintiff] has sought since being sober. Additionally, [Plaintiff] was schedule to be examined by … a consultative examiner, in October of 2014, but failed to appear. However, [Plaintiff's] statements clearly indicate she has been able to work and is highly functional since becoming clean and sober." Tr. 32 (citing Tr. 707).

ORDER ~ 17

As noted above, it is Plaintiff's burden to prove substance addiction is not a contributing factor material to her disability. *Parra*, 481 F.3d at 748. This burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop the record. *See Mayes*, 276 F.3d at 459-60. Here, as discussed in detail above, the ALJ supported the DAA analysis with substantial evidence from Plaintiff's lengthy period of sobriety, including: objective medical evidence; Plaintiff's "treatment course and daily activities;" and Plaintiff's own testimony, including her ability to work full-time with certain restrictions. Tr. 32-35. The ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole. *See Bayliss*, 427 F.3d at 1217. Thus, the ALJ did not err in failing to further develop the record in this case.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ's finding that Plaintiff's substance use was material to the determination of disability was supported by substantial evidence; and the ALJ did not err in his duty to develop the record. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** April 11, 2018.

*s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge
